Hoffman, J.—
Cases,like the one before us, though not of frequent occurrence, present questions of considerable importance. There are few authorities which bear on the subject.
The general rule is, that a purchaser, when the contract is completed after the time stipulated, pays interest on his purchase-money, and takes the rents and profits. (Esdaile v. Stephenson, 1 S. & St. 123.)
In Dias v. Glover, (1 Hoffman’s Ch. Rep. 72,) it was decided, that where the vendor had caused delay without just cause, the vendee might be exempted from paying interest, leaving the vendor to take the rents. This option was given to the purchaser. Two English authorities to this effect are cited. In another case, the Court refused interest, where the vendor did not establish a title, until five years after the contract. (Birch v. Podmore, Seton on Decrees, 213.)
Sir John Leach, in Paton v. Rogers, (6 Mad. 256,) expresses the rule generally, “that if the vendor has improperly delayed the execution of the contract, and refused to give possession, he ought not to be benefited by the delay he has occasioned.”
Mr. Sugden says: “ It frequently happens, that a contract for a leasehold estate is not carried into execution at the time appointed, and the vendor continues in possession. The estate, of course, daily decreases in value, and a question constantly arises, whether the purchaser shall be compelled to pay the full price agreed to be given for the estate, or what arrangement shall be made between the parties.”
He then cites the decision in Dyer v. Hargrave next stated, and considers that it contains a just rule.
*242 In Dyer v. Hargrave, (10 Vesey, 505,) the bill was filed to compel the defendant to complete his contract for the sale by him of a leasehold, made in 1802. The cause was heard in 1805. Various objections were made, which were overruled by the Court. When the decree was pronounced, Mr. Romilly observed, with reference to the time at which the agreement was to have been performed, that there must be some rule as to leasehold interests; that this agreement ought to have been performed three years ago; and that the purchaser could not be expected to take a term of twenty-four years at the price which he had agreed to give for a term of twenty-seven years. The cause stood over, that authorities might be found, but none were produced.
The Master of the Rolls said,-“that for the time elapsed before the execution of the agreement, in consequence of the pendency of the suit, interest should be paid by the purchaser-; and a rent should be set upon the premises in respect of the possession of the vendor.”
It cannot admit of doubt, that this was meant to meet Mr. Romilly’s suggestion, and to fix a rent by having regard to the diminished value of the lease. Rents received, would, of course, in ordinary cases, be taken by the purchaser, when he was charged with interest.
In Hamer v. Williams, (1 Jones and Cary, 274,) the rental under which a purchase was made, stated, that there was an outstanding lease for twenty-one years unexpired, and one life. It turned out to be for forty-one years, and several lives; and a reference was made to ascertain how much the value of the purchase was diminished.
The case of Champernoyne v. Brooks, is of great importance upon this subject. It is reported in 3 Clark & Finelly, 4; 4 Id. 589, and 3 Young & Collyer, 4. It was the reverse of the present case, being a delay caused by the purchaser.
° I deduce from it the following propositions:—Even when a contract fixes the time for performance, the conduct of either party may disentitle him from insisting upon the adoption of that period; and may warrant the Court to assume some other date, upon questions of the payment of interest on purchase money, or of the appreciation or depreciation of the property.
When the subject of the purchase is a reversionary interest, de *243 pending, for the whole estate, upon a series of lives, or for portions upon a life or a series of lives—if the vendee, by his own fault, prevents the fulfilment, until lives drop in, and the estate.be thus more valuable than at the time of the contract, the Court will not let him profit by his fault, but will subject him to a payment commensurate with his gain.
Thus far, the case of Blount v. Blount, before Lord Hardwicke, (3 Atk. 636,) went; and as the purchaser there.had been let into possession, he was to be charged with the increase of the value in the shape of profits reaped by him. The benefit arising from the wearing away of lives was treated, in Ghampernoyne v. Brooks, as standing on the same ground as the dropping in of lives, and Lord Hardwicke’s distinction was disapproved.
The Court (in the last decree, 1839) fixed upon the 20th of January, 1825, as the period of the date of the conveyance. - The contract made in 1812, was, however, taken by the Court as of July, 1816, for the questions before it. The Master was directed to estimate the increased value arising from the dropping of lives between 1816 and the 20th of January, 1825. This was to be added to the balance of the purchase money; and the plaintiff (the vendor) to be entitled to interest upon the aggregate from that date. Rents and profits were to be ascertained from the 20th of January, 1825, and charged to the vendor. He was charged also with the payments made on account of the purchase money, and interest upon them.
Lord Lyndhurst, on the argument in the House of Lords, put this case:—“ Suppose there is a sale of the reversion of a term, with a nominal rent; that nineteen years of the term have run out, while.one of the parties has refused to execute the contract, and, at the end of that time, the decree is for a specific performance. The party would have three or four times the value of his money, on account of his own litigation.”
Now, the depreciation of a leasehold by the lapse of the years of a term, is similar, as relates to the vendor, to the increase of value by the dropping or wearing of lives, to the vendee. If the fault of the vendee subjects him to the payment of an enhanced price, the default of the vendor must equally compel him to take a diminished amount.
The referee in this case did not fix the rent of $750, chargeable *244 to the defendant, with a view to the annual depreciation of the value of the lease,.for he allows the extra sum of $796.50 on that ground. The Judge, at Special Term, rejects the last item, because he assumes it is covered by the former sum.
The learned Judge cannot be considered as meaning, that, in point of fact, the decreased value was allowed for, in the extra $100 a year beyond the rents actually received, because the referee explicitly allows this addition on another ground, and allows the $796.50 on that ground. The Judge must be understood as meaning, first, that the extra $100 should not have been allowed, upon the ground of the referee; and next, that the sum of $750 per annum was a sufficient compensation to the plaintiff, in the shape of a rental comprising the element of depreciation, from lapse of time. This view disregards the amount of rents actually received, and seems to be what the Master of the Rolls prescribes in the case, from 10th, Vesey, before cited.
I have no doubt, under the cases cited, that in the case of a delay in the consummation of' a contract of sale, arising from the fault of the vendor, the purchaser has a, right to call upon the Court to fix the period of completion as of a later day than its date; and to fix it as of the time when the vendor has conceded, or the Court has, decided, that the contract should be executed; or at the time when possession has been, or could have been taken.
But another proposition seems to me equally clear. The purchaser may also elect to treat the property as his from the date of the contract, or the time fixed for its performance. But he cannot take advantage of rules applicable to the one position, and profit also by rules applicable- exclusively to the other. He cannot, for example, be considered as a purchaser at the time of the interlocutory order of 1856, upon the question of deterioration of value, or liability to interest; and as purchaser from the date of the contract, upon the question of a right to rents. He may select one or other of the periods to establish his relations; but he must abide by the one he chooses, in all its results.
To apply these principles to the present case. The purchaser, the plaintiff, had a right to say, that he would treat the contract as if it were to have been executed on the 18th of June, 1856, the day of the judgment for performance. He had no right to carry *245 the question of value beyond that date, because he was at liberty, upon paying the purchase money, to have taken possession, and the Court would have given him a writ of assistance, or other adequate process.
Then the question would have been this: What was the value of the property on the 18th of June, 1856, on the basis of the purchase money, being its value on the 1st of May, 1853 ?
This regulates the sum to be paid, as if the contract were made on the 18th of June, 1856, at the reduced price. It then excludes interest on the purchase money, on the one side, and rents on the other. It excludes, also, all payments for taxes and repairs. In short, it takes up the case precisely as if the contract was then made, and then enforced, at the reduced price. In this view, the inquiry is, What is the amount of the redaction from the contract price ? and how is that amount to be arrived at ?
If we take the mere arithmetical proportion between seventeen and say, fourteen years, the difference would be $769, upon the contract price of $4500.
It is apparent, that the referee has proceeded upon the testimony of Albert Van Winkle, who alone seems to have reflected upon the question with a view to some principle. He makes the depreciation, for three years, $750, upon the scale which the referee has adopted. The referee has added $46.50 for the additional one month and eighteen days, making the sum $796.50.
A calculation will show, that the plaintiff would have gained about three hundred dollars on this basis, adopting the decrease of value at the sum found by the referee.
But he did elect to fix the equities between him and the plaintiff upon the other footing, and must abide by it. It, then, is obvious, that had he obtained possession according to the terms of the contract, and retained that possession without material changes of the premises, for the period in question, he would have been subjected to precisely the same depreciation in the value of the lease, as is now found to have occurred.
It is, however, contended, that the plaintiff could have made extensive improvements, had he had possession in 1853, which it would have been inexpedient to make, on so large and beneficial a scale, in 1856; and that, from such improvements, a great increase of profits would have arisen.
*246 If this were a tenable view of the case, yet, by the agreement, the plaintiff was apprized that the whole of the first floor was subject to a lease for two years from the 1st of May, 1853, and, by his complaint, he says that the damages arose to him from his inability to fill up certain adjacent ground, on which (or on the premises in question) he intended to build after the two years mentioned in the agreement had expired.
Thus, then, this source of damage could only arise after the 1st of May, 1855, and could only exist down to the first order of reference, in the nature of an interlocutory decree, made the 18th of June, 1856. On the plaintiff’s own theory, therefore, a portion only of the $769.50 could be allowed.
But, again, in-a case for specific performance, such a ground of estimate of conjéctural profits cannot be allowed. It may be, that had the plaintiff sued for damages at law, they would have been given.
Upon the whole case, therefore, the claims and rights of the plaintiff, presented and insisted upon by him, have been rightly determined by the Judge at Special Term.
The judgment should be affirmed with costs.